UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CARRIE L. HAWKINS,

                        Plaintiff                  DECISION AND ORDER

-vs-

                                                15-CV-6394 CJS

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                        Defendant.

_____

APPEARANCES

| | |
|---|---|
| For the Plaintiff: | Brandi C. Smith |
| | Kenneth R. Hiller |
| | Timothy Hiller |
| | Law Offices of Kenneth Hiller, PPLC |
| | 6000 North Bailey Avenue, Suite 1A |
| | Amherst, New York 14226 |
| For the Defendant: | Karen T. Callahan |
| | Social Security Administration |
| | Office of General Counsel |
| | 26 Federal Plaza, Room 3904 |
| | New York, New York 10278 |
| | |
| | Kathryn L. Smith, A.U.S.A. |
| | Office of the United States Attorney |
| | for the Western District of New York |
| | 100 State Street, Room 620 |
| | Rochester, New York 14614 |

INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant"), which denied the application of Carrie Hawkins ("Plaintiff") for Social Security Disability Benefits ("DIB") and Supplemental Security Income ("SSI") disability benefits. Now before the Court is Plaintiff's motion (Docket No. [#10]) for judgment on the pleadings and Defendant's cross-motion [#12] for judgment on the pleadings. Plaintiff's application is granted and Defendant's application is denied.

BACKGROUND

The reader is presumed to be familiar with the parties' submissions, which contain detailed recitations of the pertinent facts. The Court has reviewed the entire record and will offer only a brief summary of those facts. Plaintiff claims to be disabled due to both physical impairments and psychological impairments. These impairments include depression, anxiety and lower-back pain caused by degenerative joint disease. For her depression and other general physical ailments, Plaintiff received treatment from her primary care physician, Christian Wightman, M.D. ("Wightman"), between August 2011 and October 2012. (257-272, 406-407). Wightman's office notes record Plaintiff's claims of depression, much of which she attributed to problems with her family, but Wightman's own mental status examination findings were relatively minimal. (257) ("occasionally tearful," "somewhat pressured speech," "depressions seems very situational"); (262) ("Psych Answers appropriately, good eye contact, memory intact, no agitation or depressed mood"); (263) ("Psych answers appropriately, good eye contact, memory intact, well groomed, +depressed affect, though content logical"); (265) ("Depression -

2

notes Effexor helpful.  No [suicidal ideation].  Mood improved, [but] stressed [over recent cancer diagnosis]," "psych answers appropriately, good eye contact"); (267) ("Depression - notes Effexor very helpful. . . . mood improved, [but] stressed with cervical [cancer] surgery," "psych answers appropriately, good eye contact"); (269) ("Psych: mood and affect are normal.").

On July 9, 2012, while Plaintiff was under Dr. Wightman's care, she received an extensive mental status examination, after she went to the ER complaining of "feeling depressed," primarily due to stress over caring for her family. (392, 401).[1]  At the ER, Plaintiff asked to be admitted, but the examiner found that she did not meet the criteria for admission. (401).  In that regard, Plaintiff's examination results were essentially normal except for some "mild" depression. (400) (Well groomed, good eye contact, cooperative attitude, appropriate psychomotor, oriented, appropriate language, normal speech, average intelligence, intact memory, congruent mood but flat affect, euthymic mood with mild depression, no hallucinations, normal though processes, no suicidal ideation, fair insight and fair judgment).  Plaintiff also received a perfect score on a Mini-Mental State Examination. (395-396).

As mentioned above, Wightman's findings were generally mild.  Nevertheless, on October 1, 2012, Wightman completed a mental residual functional capacity assessment report, which, among other things, stated that Plaintiff would "weekly have depressive or anxious symptoms that would preclude regular work." (412).  Wightman further indicated

---

[1] Before proceeding to the hospital, Plaintiff was seen by Dr. Wightman, who reported that Plaintiff claimed that her depression medications weren't "working well," and that she felt she was having "panic attacks." (402).  Wightman noted that Plaintiff seemed "very tearful" and insisted upon going to the hospital, even though she answered his mental status examination questions appropriately. (402).

3

that Plaintiff would likely miss more than four days of work per month due to her depression and anxiety. (414). When asked to describe the signs and symptoms that supported his opinion, Wightman listed "anhedonia or pervasive loss of interest in almost all activities," "apetite disturbance with weight change," "decreased energy," "generalized persistent anxiety," "somatization unexplained by organic disturbances," "difficulty thinking or concentrating," "pathological dependence, passivity or agressivity" [sic], "emotional lability," "sleep disturbance" and "involvement in activities that have a high probability of painful consequences which are not recognized"(411), even though the Court cannot find where such findings were previously documented by Wightman in the record.[2]

At the Commissioner's request Plaintiff underwent a consultative psychiatric evaluation by Yu-Ying Lin, Ph.D. ("Lin"). (276-279). In pertinent part, Lin concluded that Plaintiff was "not able to maintain a regular schedule" or "relate adequately with others" or appropriately deal with stress. (278-279). Lin stated, though, that such "difficulties [we]re caused by a lack of motivation." (279). Overall, Lin indicated that her findings were "consistent with psychiatric problems," but that such problems did "not appear to be significant enought to interfere with the claimant's ability to function on a daily basis." (279).[3]

---

[2] Wightman also indicated that Plaintiff did not use illegal drugs, even though three months earlier she indicated to another health care provider that she used a "couple of hits a day [of marijuana] for anxiety." (393).

[3] The ALJ found that Lin's report was internally inconsistent, but the Court does not agree. That is, the Court interpret's Lin's report to mean that while Plaintiff has some psychiatric issues, they are not significant enough to cause the limitations noted above. Rather, according to Lin, those limitations (regarding maintaining a regular schedule, etc.) "are caused by a lack of motivation." (279).

The Commissioner also had Plaintiff undergo an internal medicine consultative examination, the results of which were essentially normal. (283) ("No limitations based on physical evaluation, except possibly limiting lifting, carrying, pushing, pulling to light[-]to[-]moderately weighted objects due to current hysterectomy a few months prior.").

Notably, the consultative medical examination found no musculoskeletal problems. (282). However, subsequent to that consultative examination, Plaintiff developed lower-back pain, which testing ultimately indicated was caused by degenerative disc disease of the spine. The record contains medical records concerning this condition and the treatment that Plaintiff received, but no doctor provided an opinion as to how such condition might limit Plaintiff's functional abilities.

On September 12, 2013, Plaintiff and her attorney appeared for a hearing before an Administrative Law Judge ("ALJ"). On January 22, 2014, the ALJ issued his Decision (70-83), denying Plaintiff's claim. In pertinent part, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform certain sedentary work, including the jobs of "Table Worker" and "Addresser." (82). In making his RFC finding, the ALJ found that Dr. Wightman's opinion was entitled to only "limited weight," despite his treating relationship with Plaintiff, because it was "not well supported by his treatment records or other substantive evidence of record." (78). In reaching this determination, the ALJ noted that Wightman's mental status examination results were "generally unremarkable, except for mildly impaired memory functions." (78). The ALJ further concluded that "the clinical and diagnostic evidence of the claimant's lumbar spine impairment provides support for the residual functional capacity for sedentary exertion" (81), meaning that Plaintiff's degenerative disc disease limited her to sedentary work. Plaintiff appealed the

ALJ's ruling, but the Appeals Council declined to review that determination. (1-6).

On June 30, 2015, Plaintiff commenced this action, and on January 22, 2016, she filed the subject motion [#10] for judgment on the pleadings. On March 22, 2016, Defendant filed the subject cross-motion [#12] for judgment on the pleadings. On September 29, 2016, counsel for the parties appeared before the undersigned for oral argument.

## STANDARDS OF LAW

42 U.S.C. § 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive." The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

## DISCUSSION

Plaintiff maintains that the ALJ erred in two respects: First, by relying upon a "stale" consultative medical report and his own lay opinion in finding that Plaintiff has the physical ability to perform sedentary work, notwithstanding her degenerative disc disease; and second, failing to give "good reasons" for assigning only "limited weight" to Wightman's opinion. As to the first issue, the Court agrees that the ALJ erred by relying upon his own lay opinion concerning Plaintiff's degenerative disc disease when reaching his RFC determination. *See, e.g., Goble v. Colvin*, No. 15-CV-6302 CJS, 2016 WL 3179901, at *6 (W.D.N.Y. June 8, 2016) ("[I]t is well settled that "[t]he ALJ is not

permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Burgess v. Astrue*, 537 F.3d [117,] 131 [(2d Cir. 2008)]. Moreover, . . . the ALJ's RFC determination must be supported by competent medical opinion; the ALJ is not free to form his own medical opinion based on the raw medical evidence.") (collecting cases).  The Court also agrees that the consultative medical examination report was "stale" at the time of the ALJ's decision, insofar as the report was issued prior to Plaintiff's degenerative disc disease becoming symptomatic.  For these reasons alone, the case must be remanded for further administrative proceedings.

Plaintiff next contends that the ALJ failed to provide the requisite "good reasons" for the limited weight that he assigned to Wightman's opinion.  In particular, Plaintiff asserts that the ALJ's observation, that "[t]he majority of the claimant's mental status examinations throughout the period of adjudication were generally unremarkable, except for mildly impaired memory functions," is "factually inaccurate."[4]  Plaintiff, though, does not claim that Wightman reported "remarkable" findings during his *own* examinations of Plaintiff.  That is, Plaintiff does not argue that Wightman's opinion is supported by any particular findings of his own.  Instead, Plaintiff argues that Wightman's opinion is consistent with findings made by Dr. Lin, the consultative examiner, and by Laura Bligh, LMHC ("Bligh"), a therapist who treated Plaintiff on three occasions.[5]

---

[4]Pl. Memo of Law [#10-1] at p. 25.

[5]Pl. Memo of Law [#10-1] at p. 25-27.

ALJ's are required to provide "good reasons" when they reject the opinion of a treating physician. *See, Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) ("The failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand."). However, the Court does not agree that the ALJ's observation on this point was "factually inaccurate." Rather, the Court tends to agree that Plaintiff's mental status examinations were generally unremarkable. For example, contrary to Plaintiff's suggestion, Lin's mental status examination was generally unremarkable, except for "mildly impaired" attention and concentration, impaired memory, cognitive functioning that "appear[ed] to be below average," and "fair" judgment. (277-278). As noted above, the Court interprets Lin's report as indicating that the most significant limitations on Plaintiff's ability to work were due to her "lack of motivation," not mental illness. Similarly, Bligh's mental status examination found only "anxious" mood, "mildly impaired" memory, "fidgety" psychomotor activity, thoughts preoccupied by external stressors, poor judgment and poor frustration tolerance (473-474), which the ALJ took into consideration when making his RFC determination. *See*, (79-80) ("[T]he undersigned finds that limitations [in the RFC] to simple instructions and tasks in a low[-]stress work environment reasonably account for any cognitive restrictions the claimant exhibits."); *see also*, (75) (Including in RFC determination that Plaintiff's ability to focus and concentrate is limited: "[A]ble to consistently maintain concentration and focus for up to two hours at a time.").

The Court agrees with Plaintiff, though, insofar as it finds that, upon remand, the ALJ should attempt to develop the record by obtaining Bligh's treatment notes, if any, from the sessions on July 30, 2012, August 20, 2012, and September 17, 2012, which

8

are not contained in the record. *See*, (476).[6]

## CONCLUSION

Plaintiff's application for judgment on the pleadings [#10] is granted, and Defendant's cross-motion [#12] is denied.  This matter is remanded to the Commissioner for further administrative proceedings, pursuant to 42 U.S.C. § 405(g), sentence four.  The Clerk of the Court is directed to close this action.

    So Ordered.

Dated: Rochester, New York
      October 26, 2016

                                  ENTER:

                                  /s/ Charles J. Siragusa
                                  CHARLES J. SIRAGUSA
                                  United States District Judge

---

[6] Interestingly, Plaintiff hopes that Bligh's treatment notes will somehow discredit Bligh's subsequent RFC report, which the ALJ purportedly gave "significant weight." (79). *See*, Pl. Memo of Law [#10-1] at pp. 26-27 ("[T]he ALJ should have developed the record by requesting these records before he blindly adopted her [Bligh's] opinion as truth.").  Plaintiff does not explain, nor can the Court fathom, why Bligh would have issued an RFC report that understates the severity of her findings during the three therapy sessions.  Such a theory seems far-fetched at best.  Nevertheless, in the interests of having a complete record, the ALJ should attempt to obtain those records.